# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILLIAM SHIRDEN,** | Civil Action No. 05-4050 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **JOSE M. CORDERO, individually and in his capacity as Director of the East Orange Police Department; MICHAEL CLEARY, individually and in his capacity as  Acting Chief of the East Orange Police Department; EAST ORANGE POLICE DEPARTMENT; MAYOR ROBERT L. BOWSER, individually and in his capacity as Mayor of East Orange; and CITY OF EAST ORANGE,** | **HON. WILLIAM J. MARTINI** |
| **Defendants.** | |

Matthew D. Areman
Markowitz & Richman
1100 North American Building
121 South Broad Street
Philadelphia, PA 19107

Peter H. Demkovitz
Markowitz & Richman
24 Wilkins Place
Haddonfield, NJ 08033
         (*Attorneys for Plaintiff*)

Carol A. Ferentz
Grieco, Oates & Defilippo, LLC
81 Northfield Avenue, Suite 205
West Orange, NJ 07052
         (*Attorney for Defendants*)

**MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.[1]  Plaintiff opposes the motion in part.  Oral argument was held on September 17, 2007.  For the reasons expressed herein, Defendants' motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The following is a brief summary of the factual and procedural history relevant to the instant motion for summary judgment.  At all times relevant to the Complaint in this matter, Plaintiff William Shirden was an officer with the East Orange Police Department and was President of the Fraternal Order of Police

---

[1] The Court feels compelled to note that both Defendants and Plaintiff failed to submit a separate statement setting forth material facts as required by Local Civil Rule 56.1 ("Rule 56.1"), which provides that "on a motion for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue."  L. Civ. R. 56.1.  A Rule 56.1 statement is intended to "narrow the issues before the District Court, and it has come to be relied upon by the Court as a vital procedural step."  *Id.*, cmt. 2. Although both sides have included a statement of facts in their briefs, neither party has submitted a separate statement specifically identifying the disputed and undisputed material facts as required by Rule 56.1.  This lack of compliance with the Local Civil Rules has made it difficult and time-consuming for the Court to determine whether a genuine issue of material fact exists.  Nonetheless, the Court, having found no evidence of bad faith, will decide Defendants' motion on its merits, relying on the facts put forth in the Final Pretrial Order filed September 5, 2007; the Plaintiff's answers to interrogatories; and the additional facts cited in the parties' respective briefs.

("FOP") Lodge # 111.  (Final Pre-Trial Order Stipulation of Facts (hereinafter "PTO Stip."), ¶¶ 1-2.)

Plaintiff alleges that in late 2004, he began receiving information from other East Orange police officers indicating that they had received a verbal order, initiated by Police Director Jose M. Cordero, instructing them to stop vehicles with three or more black occupants to do a records check, even if the officer did not have probable cause or even reasonable suspicion.  (Pl.'s Supp. Resp. to Defs.' Interrog. # 14.)  On or about December 14, 2004, Plaintiff alleges, certain East Orange police officers stated at a union meeting that they had been instructed to conduct these vehicle stops, as well as to stop all black males carrying backpacks.  (*Id.*)  After this meeting, Plaintiff wrote a letter to Cordero asking for a meeting with Cordero to discuss these new initiatives, including the fact that officers were being asked to perform "illegal acts" that violated civilians' rights.  (*Id.*; Defs.' Ex. K.)  Plaintiff received no response.  (Pl.'s Supp. Resp. to Defs.' Interrog. # 14.)

On December 26, 2004, Plaintiff alleges he received a phone call at his home from a representative of radio station 98.7 "KISS" FM to discuss these directives.  (*Id.*)  In a radio interview, Plaintiff stated that the FOP does not condone any illegal stops or questioning of citizens.  (Pl.'s Supp. Resp. to Defs.' Interrog. # 14; PTO Stip. ¶ 5(a).)  On December 28, 2004, a reporter from UPN-9

television interviewed Plaintiff concerning allegations about Cordero's order to increase the scope of police stops.  (Pl.'s Supp. Resp. to Defs.' Interrog. # 14; PTO Stip. ¶ 5(b).)  Plaintiff stated that he had asked to speak to Cordero on this matter, and had not yet received a reply.  (Pl.'s Supp. Resp. to Defs.' Interrog. # 14.)

On December 29, 2004, Plaintiff was ordered to report to the Professional Standards Unit for the purpose of initiating an administrative investigation pertaining to the allegations he made to the press.  (Defs.' Ex. I.) Plaintiff was also ordered to answer eight questions regarding the information he received about Cordero's orders, and provided his answers on January 5, 2005. (PTO Stip. ¶ 6.)  On January 10, 2005, the Professional Standards Unit referred the case to City Attorney Kevin Harris for further review and recommendations. (Defs.' Ex. I.)  On February 7, 2005, Harris informed the Professional Standards Unit that he had reviewed the case, and advised the Unit that officers have a duty to report misconduct by other officers. (*Id.*)  Harris recommended that the Professional Standards Unit proceed against Plaintiff.  (*Id.*)

On or about February 12, 2005, Plaintiff was informed that he had been reassigned in his duties.  (Pl.'s Supp. Resp. to Defs.' Interrog. # 14.)  On or about February 15, 2005, Plaintiff agreed to an interview with the East Orange *Record* newspaper.  (*Id.*)  On February 17, 2005, an article in the *Record* reported on the recent events in the East Orange Police Department ("EOPD"), including

Plaintiff's transfer.  (*Id.*)  The article quoted Plaintiff as saying "[b]asically, they were profiling.  They wanted us to stop anyone with a backpack in an area where burglaries had occurred."  (PTO Stip. ¶ 5(c).)

Lt. Tony Cook of the Professional Standards Unit conducted a recorded interview of Plaintiff on February 25, 2005 regarding the *Record* article. (Pl.'s Supp. Resp. to Defs.' Interrog. # 14; PTO Stip. ¶ 7.)  On April 12, 2005, Plaintiff was served with a "Notice of Minor Disciplinary Action" signed by Cordero.  (PTO Stip. ¶ 8; Defs.' Ex. J.)  The notice lists four charges (False Statements, Familiarization, Reporting Violations of Laws, Rules or Orders, and Neglect of Duty), and indicates that a five-day suspension would commence on April 12, 2005.  (Defs.' Ex. J.)

Plaintiff brought the instant suit on August 15, 2005 against Cordero; Michael Cleary, Acting Chief of the EOPD; the EOPD; East Orange Mayor Robert L. Bowser; and the City of East Orange.  Plaintiff argues that his suspension and transfer were unlawful retaliation for his comments to the press.  Plaintiff alleges violations of (1) his First Amendment rights, brought pursuant to 42 U.S.C. § 1983; (2) the New Jersey Conscientious Employee Protection Act ("CEPA"); and (3) the New Jersey Law Against Discrimination ("NJLAD").

Defendants move for summary judgment as to all three claims. Plaintiff opposes summary judgment as to his § 1983 and NJLAD claims, but has

voluntarily withdrawn his CEPA claim and does not oppose summary judgment as to that count.  (Pl.'s Br. 6, 26.)  The Court will therefore **GRANT** Defendants' motion for summary judgment as to Plaintiff's CEPA claim.  For the reasons discussed below, however, the Court will **DENY** Defendants' motion in all other respects.

<u>**SUMMARY JUDGMENT STANDARD**</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Equimark Commercial Financial Co. v. CIT Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

In opposing summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, only disputes over facts that might affect the outcome of the lawsuit, under the governing substantive law, will preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 247-48.  At the summary

6

judgment stage, this Court must view all evidence and consider all reasonable inferences in a light most favorable to the non-moving party.  *Marzano v. Computer Science Corp.*, 91 F.3d 497, 501 (3d Cir. 1996).

## DISCUSSION

### A.        PLAINTIFF'S § 1983 CLAIM

Count 1 of Plaintiff's Complaint alleges, pursuant to 42 U.S.C. § 1983, that Defendants took adverse action against him in retaliation for Plaintiff's exercise of his First Amendment rights to freedom of speech and association. Defendants move for summary judgment on two separate grounds.

#### 1.        Protected Speech

A plaintiff asserting civil rights violations under § 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  *Id.*  For a claim under § 1983 to survive summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  *Id.*

Here, whether Defendants acted under color of state law is not at

issue.  Instead, Defendants argue that no genuine issue of fact exists on the issue

of whether the Defendants deprived Plaintiff of a federal right.  Specifically,

Defendants argue that, as a matter of law, Plaintiff's speech was not protected by

the First Amendment.

The Supreme Court recently reaffirmed, in *Garcetti v. Ceballos*, that

"a citizen who works for the government is nonetheless a citizen."  126 S. Ct.

1951, 1958 (2006).  Thus, "[s]o long as employees are speaking as citizens about

matters of public concern, they must face only those speech restrictions that are

necessary for their employers to operate efficiently and effectively."  *Id.*  While

reaffirming these important principles, however, *Garcetti* also "narrowed the

Court's jurisprudence in the area of employee speech."  *Foraker v. Chaffinch*, No.

06-4086, 2007 U.S. App. LEXIS 20739, *28 (3d Cir. Aug. 30, 2007).  *Garcetti*

held that "when public employees make statements pursuant to their official

duties, the employees are not speaking as citizens for *First Amendment* purposes,

and the Constitution does not insulate their communications from employer

discipline."  126 S. Ct. at 1960.

Under *Garcetti*, we must first determine in what capacity Plaintiff

was speaking when he made the statements at issue in this matter.  *Foraker*, 2007

U.S. App. LEXIS 20739, at *34.  Only if we determine that Plaintiff spoke as a

8

citizen do we proceed to the two-step inquiry outlined in *Pickering* and its progeny — (1) whether the statement involved a matter of public concern; and, if the answer is yes, then (2) whether the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of his statements. *Garcetti*, 126 S. Ct. at 1958 (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).

The threshold inquiry for this Court, therefore, is whether Plaintiff's statements to the press were made within the scope of his official duties as a police officer or in his capacity as union president. *See id.* Plaintiff argues — and Defendants dispute — that the press contacted Plaintiff because he was the union president, and that his comments were made in that capacity. If Plaintiff's version of the facts is correct, then *Garcetti* would not control. *See Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006) (noting that because Plaintiff's comments "were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff," *Garcetti* is inapposite).

Here, the Court's initial determination under *Garcetti* clearly depends upon the resolution of disputed issues of material fact surrounding the context in which Plaintiff's statements were made — for example, whether, and under what circumstances, the press reached out to Plaintiff or Plaintiff contacted the press. The Court, therefore, does not reach the *Pickering* inquiry at this point.

9

At this stage in the proceedings, viewing the facts alleged in the light most favorable to Plaintiff, the Court concludes that genuine disputes as to issues of material fact preclude the grant of summary judgment in favor of Defendants as to Plaintiff's claimed First Amendment violations.

### 2. Municipal Liability

Defendants also argue that because municipal defendants cannot be liable under the theory of *respondeat superior* for violations of § 1983, summary judgment must be granted as to the City of East Orange and the EOPD.  (Defs.' Br. 15; Defs.' Reply Br. 5.)  Defendants paint an incomplete picture of the law.  In *Monell v. New York City Department of Social Services*, the Supreme Court held that municipal liability under § 1983 cannot be based on the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights.  436 U.S. 658, 691-95 (1978).  *See also Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007).  Municipal liability attaches, however, when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  *Andrews v. City of Philadelphia*, 895 F.2d 1469,

10

1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Under the precedent of the Supreme Court and the Third Circuit, it is clear that an unconstitutional policy can be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Hill v. Borough of Kutztown*, 455 F.3d 225, 245-47 (3d Cir. 2006); *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003). Here, Defendants do not dispute that Police Director Cordero was a policy-making individual of high-ranking status, and was intimately involved in the decision to discipline Plaintiff. Indeed, Cordero signed the Notice of Minor Disciplinary Action which imposed Plaintiff's suspension, and Cordero himself testified that in order for the suspension to be imposed, Cordero had to agree with it. (PTO Stip. ¶ 8; Defs.' Ex. J; Defs.' Ex. H, 58:23–59:6.) Moreover, Cordero testified that as Police Director, he was responsible for "develop[ing] policy for the efficient running [of the city] and for providing public safety services to the citizens of this city," and Cleary testified that while his own duties as Chief of Police include running the day-to-day operations of the department, it is the Police Director who "sets policy." (Cordero Dep. 7:21-8:1; Cleary Dep. 9:25-10:8.)

Defendants' arguments on this issue are without merit.  The Court

will therefore deny Defendants' motion for summary judgment as to the City of

East Orange and the EOPD.

**B.        PLAINTIFF'S NJLAD CLAIM**

In Count 3 of the Complaint, Plaintiff alleges violations of the

NJLAD by the EOPD, the City of East Orange, and Cordero.  The NJLAD

prohibits:

> reprisals against any person because that person has opposed
> any practices or acts forbidden under this act or because that
> person has filed a complaint, testified or assisted in any
> proceeding under this act or to coerce, intimidate, threaten or
> interfere with any person in the exercise or enjoyment of, or on
> account of that person having aided or encouraged any other
> person in the exercise or enjoyment of, any right granted or
> protected by this act.

N.J.S.A. 10:5-12(d).  To establish a claim of retaliation under the NJLAD, a

plaintiff must demonstrate by a preponderance of the evidence that: (1) he engaged

in a protected activity known to the employer; (2) following the protected activity,

the employer made an adverse employment decision towards him; and (3) a causal

link exists between the two.  *See Jamison v. Rockaway Tp. Bd. of Educ.*, 242 N.J.

Super. 436, 445 (App. Div. 1990).  Here, Plaintiff has established a *prima facie*

case of retaliation.  It is undisputed that the EOPD knew about Plaintiff's

comments to the press, and Plaintiff has put forth evidence showing that he was

speaking out, as the union president, against alleged directives of racial profiling

within the EOPD.  Plaintiff has also demonstrated that as the direct result of an

investigation into his comments to the press, he was subjected to a five-day

suspension without pay.[2]

Once a plaintiff establishes a *prima facie* case of retaliation, the

burden of production shifts to the employer to articulate a legitimate,

non-retaliatory reason for the adverse action taken.  *See Fuentes v. Perskie*, 32

F.3d 759, 762 (3d Cir. 1994).  Here, Defendants claim that Plaintiff was suspended

because, essentially, his comments to the press were untrue, unfounded and made

in violation of departmental policies.  Defendants have met their burden of

production at this stage of the analysis.

To defeat summary judgment when the defendant answers plaintiff's

prima facie case with legitimate, non-discriminatory reasons for its action, the

plaintiff must point to some evidence, direct or circumstantial, from which a

factfinder could reasonably either (1) disbelieve the employer's articulated

legitimate reasons; or (2) believe that an invidious discriminatory reason was more

likely than not a motivating or determinative cause of the employer's action.  *Id.* at

764.  To discredit the defendant's proffered reasons, however, "the plaintiff cannot

simply show that the employer's decision was wrong or mistaken, since the factual

---

[2]     The Court notes that disputed questions of material fact also exist with respect to
the facts and circumstances of Plaintiff's transfer, which could also potentially be an adverse
employment action under either § 1983 or the NJLAD.

dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765. Instead, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's proffered reasons "that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.* (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

Here, among other evidence, Plaintiff points to the timing of the EOPD's investigation; the investigation's limited focus; and the fact that Plaintiff was the only officer disciplined, including the fact that according to Chief Cleary, no other officer in the previous five years had been charged with any of the four charges Plaintiff faced (Cleary Dep. 56:16-57:13).

In short, the Court is satisfied that Plaintiff has put forth sufficient evidence to enable a reasonable factfinder to conclude that an invidious discriminatory reason was more likely than not a motivating or determinative cause of his employer's adverse actions in this case. The Court, therefore, must deny Defendants' motion for summary judgment as to Plaintiff's claim under the NJLAD.

14

## <u>CONCLUSION</u>

For the foregoing reasons, summary judgment in favor of Defendants is

**GRANTED** as to Count 2 of the Complaint (CEPA), and **DENIED** as to Count 1

(§ 1983) and Count 3 (NJLAD).  An appropriate Order accompanies this Opinion.


Dated:   September 21, 2007


                              s/William J. Martini
                              William J. Martini, U.S.D.J.